**McKESSON CORPORATION, d/b/a McKesson Drug Company,**
Plaintiff,

v.

**CHAUFFEURS, TEAMSTERS, AND HELPERS LOCAL UNION NO. 150, Defendant.**

No. CIV. S–90–0736 WBS.

United States District Court, E.D. California.

March 13, 1991.

John S. Schauer, San Francisco, Cal., for plaintiff.

Neil K. Bodine, Beeson, Tayer, Silbert & Bodine, Sacramento, Cal., for defendant.

MEMORANDUM AND ORDER

SHUBB, District Judge.

This matter is before the court on the parties', cross-motions for summary judgment. Plaintiff requests the court to vacate an arbitration award. Defendant requests the court to confirm the award and to grant its request for attorney's fees. Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1607, 26 L.Ed.2d 142 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir.1984).

### THE CASE

#### A. *Undisputed Facts*

Plaintiff, McKesson Corporation ("Company") filed a complaint to vacate and set aside an arbitration award under § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), against defendant Chauffeurs, Teamsters, and Helpers Local Union No. 150 ("Union"). Union answered, counterclaimed to confirm the arbitration award, and requested an award of attorney's fees under Cal.Lab.Code § 1128.

On March 16, 1989 Holly Hill Looman ("Looman") an employee of Company filed a grievance challenging her March 11, 1989 termination. Company terminated Looman after she had been absent for twelve consecutive months. On March 10, 1988, after developing back pain and headaches, Looman left work at lunch time and did not return. She sought medical treatment for her injuries and Looman was placed on total disability until she was able to see her regular physician. In April of 1988, Looman's physician gave her a restricted release to work but her supervisor informed her that there was no light duty work available. Looman did not file a grievance at that time.

On October 19, 1988, Company offered Looman light duty work. At this time Looman was in her final weeks of pregnancy (she gave birth on November 28, 1988). Company told her that the job involved inventory work but provided Looman with no details. Her physician placed her on full pregnancy disability from October 19, 1988 until six weeks postpartum.

After Company received the information relating to Looman's pregnancy disability, it contacted the physician and specifically described the work it wanted Looman to perform. The physician signed a document removing Looman from total disability and releasing her to work the "modified desk job" created by Company. Neither the physician nor the Company informed Looman that she was expected to work on the following day. Looman did not report for work in the belief that she was on pregnancy disability. On October 21, 1988, Company advised Looman that she was terminated effective October 19, 1988 "due to violation of company work rule." Under Paragraph 9.A of the collective bargaining agreement, Company has the right to discharge an employee for good cause.

Looman filed a grievance alleging her discharge constituted a violation of the collective bargaining agreement. She also informed her employer, by letter dated October 26, 1988, that she was "fully willing to do any work approved by her doctor, and [she understood that] the company has now created a desk job which she can do. She is available to return at your direction."

On January 27, 1989, Company advised Looman that, in response to her grievance, she would be reinstated with benefits and returned to work "contingent upon her submission of an unconditional medical release from her physician." Looman stopped processing her grievance and attempted to obtain the unconditional release but was unable to do so. By letter dated March 13, 1989, Looman was advised as follows: "Be advised that since your last day worked was 3/11/88, you have been absent from work in excess of twelve (12) consecutive months as of 3/11/89. Thus per Paragraph 18, *Seniority* of the Labor Agree-

ment, as of 3/11/89 your seniority is considered broken and your employment is terminated." The parties submitted the matter to arbitration. The hearing was held on August 29, 1989 and briefs were submitted in November of 1989. In an award and opinion dated April 11, 1990, the arbitrator found that Looman's termination violated Paragraph 18.

### B. *Characterization of the Dispute Submitted to Arbitrator*

The following issue was submitted to the arbitrator:

> Was the employment of grievant, Holly Looman, properly terminated per Article [Paragraph] 18, Seniority, of the labor agreement? If not, what is the appropriate remedy, if any?

Paragraph 18 provides in relevant part:

> 18 SENIORITY
>
> Seniority is defined as continuous length of service in the bargaining unit.
>
> \*   \*   \*   \*   \*   \*
>
> Seniority shall be considered broken and employment terminated by:
>
> \*   \*   \*   \*   \*   \*
>
> C. Absence or layoff from work in excess of twelve (12) consecutive months

It is undisputed that Looman was not present at work for twelve consecutive months. Plaintiff Company argued that because Looman was in fact absent for twelve consecutive months she was properly terminated and that any reason for the absence is not relevant. The arbitrator, however found that Company could not

> take into account, in calculating the number of consecutive months of absence, the three-month period from October 19, 1988, the date of her first discharge, to January 27, 1989 when she was offered reinstatement in settlement of her grievance.

The arbitrator reasoned that

> The company has the right under Article [Paragraph] 9.A. of the labor agreement to discharge an employee for "good cause." Good cause requires fairness

and justness. To permit an employer to terminate an employee and then to count the absence of that employee caused by the termination as a basis for a subsequent discharge on a different ground is neither fair nor just.

The grievant had not been absent twelve consecutive months on March 13, 1989. She was absent a little over seven months from March 11, 1988 until October 19, 1988. At that point the period of consecutive absences was interrupted by her termination. Since she did not accept the offer to return on January 27, 1989, the period of absences began to run again, but it was a new period. After about one and one-half months, she was again terminated.

To interpret and apply Article [Paragraph] 18.C. in the way the employer did was a violation of the good cause requirements of the collective bargaining agreement. Accordingly, I shall hold that her termination on March 13, 1989 for having been absent for twelve consecutive months was a violation of the collective bargaining agreement, specifically 18 C. as interpreted in light of the good cause requirement of 9.A.

## STANDARDS

■ The scope of review of an arbitrator's decision under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is narrow. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 367, 98 L.Ed.2d 286 (1987); *Federated Department Stores v. United Food & Commercial Workers Union*, 901 F.2d 1494, 1496 (9th Cir.1990); *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1207–09 (9th Cir.1989) (en banc), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990). The arbitrator's award must be upheld unless: (1) the arbitrator's decision does not "draw[ ] its essence from the collective bargaining agreement" and the arbitrator is dispensing "his own brand of industrial justice," *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Federated Department*

*Stores*, 901 F.2d at 1496; (2) the arbitrator exceeds the scope of the issues submitted to him, *Id., Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir.1989); and (3) the award is contrary to public policy, *Federated Department Stores*, 901 F.2d at 1496.

## DISCUSSION

### A. Confirmation or Vacation of the Award

Plaintiff presents three arguments: (1) the arbitrator's award does not draw its essence from the collective bargaining agreement, (2) the arbitrator exceeded the scope of his authority and jurisdiction, and (3) the arbitrator's opinion and award was untimely and therefore the arbitration was abandoned.

### 1. The arbitrator's award draws its essence from the collective bargaining agreement

■ An arbitrator's decision draws its essence from the agreement if his interpretation is "plausible." *Federated Employers of Nevada, Inc. v. Teamsters Local No. 631*, 600 F.2d 1263, 1264 (9th Cir.1979). So long as no explicit provision of the agreement directly conflicts with the award, the court must confirm it. *Id.* at 1265. This highly deferential standard is due, in part, to the fact that "[i]t is the arbitrator's construction [of the agreement] which was bargained for." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362.

■ Plaintiff argues that the arbitrator's decision was not plausible because Paragraph 18 unambiguously provides that termination is mandated upon twelve consecutive months of absence, and the arbitrator impermissibly inferred a "good cause" requirement into Paragraph 18.

Paragraph 9 provides that employees may be discharged under specific circumstances and generally for "good cause." Paragraph 9, Section E provides

This Section 9 has no application to layoffs, retirement pursuant to a retirement plan now or hereafter established or modified by the Company (whether or

not benefits are involved), or termination or severance for any other reason other than by discharge.

Plaintiff contends that the arbitrator "absolutely ignored Article [Paragraph] 9.E by admittedly applying the 'good cause' concept to Article [Paragraph] 18.A.—an imposition or construction absolutely prohibited by the very contract to which he was bound." What the arbitrator claimed to have done was interpret Paragraph 18 in light of Paragraph 9.

The agreement contains no definition of "absence" within the meaning of section 18.A. First, it is not implausible to construe Paragraph 9 as requiring good cause to terminate an employee under 18.E. Second, and more importantly, even assuming, without deciding, that Paragraph 9.E precludes application of the "good cause" requirement to a termination under Paragraph 18, the arbitrator did not necessarily apply a good cause standard to Looman's termination. The arbitrator merely considered the fact that her absence for part of the twelve month period was due to improper conduct of Company, (the earlier improper discharge under Paragraph 9.A), and concluded absence due to improper discharge could not be considered under Paragraph 18. That interpretation was plausible and does not conflict with any express or explicit clause of the agreement.

### 2. The arbitrator did not exceed the scope of his authority

■ Plaintiff argues that in interpreting Paragraph 18 in light of Paragraph 9.A, the arbitrator exceeded the scope of his inquiry. Paragraph 10, Step 4, provides in part

2. The arbitrator shall deal only with the matter which occasioned his appointment and his decision shall be final and binding upon both parties. In no case, however, may the arbitrator make a decision which will in any way add to, subtract from, or alter the term of this Agreement.

\*    \*    \*    \*    \*    \*

5. The jurisdiction of the arbitrator is limited to whether or not a specific provision of this Labor Agreement has been violated.

Both plaintiff and defendant agree that the sole issue submitted to the arbitrator was whether Looman had been absent within the meaning of Paragraph 18. Plaintiff contends the arbitrator's consideration of the issue was limited solely to the language of Paragraph 18. Defendant argues the arbitrator was entitled to consider the entire agreement.

The parties did not expressly limit the scope of the arbitrator's review solely to the language of Paragraph 18. In the absence of limiting language, the arbitrator plausibly concluded that he was not restricted to interpreting Paragraph 18 in a vacuum and reasonably considered the totality of the agreement. That decision is entitled to the same deference as the arbitrator's interpretation of the agreement. *Pack Concrete*, 866 F.2d at 285.

### 3. Plaintiff waived any objection to the timeliness of the award

■ The agreement provides that the arbitrator "must render a decision within sixty (60) days after he has taken the grievance under submission." Paragraph 10, Step 4, subsection (2). It is undisputed that the arbitrator rendered his opinion and award after the sixty days had passed. However, no objection to the delay was raised until after the arbitrator issued his opinion. Paragraph 10, Step 4, subsection (4) provides

Any grievance not presented in writing to the Company by the Union as provided above with [sic] ten (10) work days of its occurrence shall be waived for all purposes. Failure to take any of the steps specified in this Article within the time limits prescribed shall constitute an irrevocable abandonment of the grievance and arbitration. Such time limits may be extended upon mutual agreement between the Company and the Union.

Plaintiff argues that Paragraph 10, Step 4, subsection (4) and the mandatory language "must" in Paragraph 10, Step 4, subsection (2) establish that the parties intended the time limit to be jurisdictional. If a time limit is jurisdictional, the award will be

invalid. *Government of India v. Cargill Inc.*, 867 F.2d 130, 134 (2nd Cir.1989). Subsection (2), however, provides that the time limits are subject to extension by mutual agreement and therefore may be waived. "The possibility of waiver of that requirement negates its being a jurisdictional prerequisite to an arbitrator's exercise of authority." *Gunn v. Veterans Admin. Medical Center*, 892 F.2d 1036, 1038 (Fed.Cir. 1990). Therefore, the court finds that the time requirement is not jurisdictional.[1] "Unless the agreement itself makes the deadline jurisdictional, a party's failure to complain about delay before the award is made forfeits his right to challenge the timeliness of the award." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1199 (7th Cir.1987); *see also Ficek v. Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965) ("The rule is sometimes stated in terms of waiver: A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act."). By failing to object to the delay before the arbitrator rendered his decision, plaintiff waived its right to challenge the timeliness of the award.

*B. Attorney's Fees*

█ Defendant also seeks an award of attorney's fees based solely on Cal.Labor Code § 1128. The court applies federal law in § 301 cases. *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 856, 107 S.Ct. 2161, 2165, 95 L.Ed.2d 791 (1987). The Labor Management Relations Act does not authorize the granting of attorney's fees for violations of § 301. *Washington Hosp. Center v. Service Employees Int'l Union*, 746 F.2d 1503, 1509 (D.C.Cir.1984). A court may grant fees if it finds that a party violated § 301 in "bad faith, vexatiously, wantonly or for oppressive reason." *Id. See also Local 162 v. B.J. Heating & Air Conditioning*, 695 F.Supp. 485, 493 (E.D.Cal.

1987) (attorney's fees may be awarded in § 301 cases under the bad faith exception to the American rule). Plaintiff does not seek an award of attorney's fees under federal law, therefore defendant's request for attorney's fees based on state law is denied.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment to vacate arbitration award be, and the same is, hereby denied;

IT IS FURTHER ORDERED that defendant's motion for summary judgment to confirm arbitration award be, and the same is, hereby granted;

IT IS FURTHER ORDERED that defendant's request for attorney's fees be, and the same is, hereby denied.

---

**1.** It appears to the court that Article 10, Step 4, subsection (4) may not even apply to the arbitrator's sixty day time limit. In light of the court's finding that subsection (4) is non-jurisdictional, the court declines to interpret that provision.