**HUGHES AIRCRAFT CO.,**
**Petitioner-Counter-Defendant-Appellee,**

v.

**ELECTRONIC & SPACE TECHNICIANS, LOCAL 1553, AFL–CIO,**
**Respondent-Counter-Claimant-Appellant.**

**No. 85–5779.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1986.

Decided Feb. 12, 1987.

As Amended July 13, 1987.

---

award and a clarification of that award. The case is a dispute between Hughes and Local 1553 over the interpretation of the collective bargaining agreement that requires promotion by seniority and a supplemental agreement that created new promotion opportunities. The controversy arose when Hughes promoted an employee under the supplemental agreement even though other employees in his department had greater seniority. The arbitration award held that Hughes Aircraft violated the collective bargaining agreement by promoting an employee under the supplemental agreement without regard to seniority. In a clarification of the award, the arbitrator ordered Hughes to demote the employee to the position he held prior to the contested promotion, despite subsequent promotions.

Hughes argues that the arbitrator's initial award misinterpreted the collective bargaining agreement and that he lacked jurisdiction to consider the issue presented in the clarification request. Local 1553 argues that the arbitrator's decision is a plausible interpretation of the collective bargaining agreement and that the award clarification was necessary to effectuate the award.

We reverse the grant of summary judgment on the arbitration award claim, but affirm summary judgment on the award clarification claim.

Howard Rosen and Michael Posner, Los Angeles, Cal., for respondent-counter-claimant-appellant.

Kenneth W. Oder, Los Angeles, Cal., for petitioner-counter-defendant-appellee.

Before KENNEDY, SCHROEDER and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Respondent Electronic & Space Technicians, Local 1553 (Local 1553) appeals the district court grant of summary judgment in favor of petitioner Hughes Aircraft Co. (Hughes) vacating a labor arbitration

I.

Hughes and Local 1553 are parties to a 1979 collective bargaining agreement (Agreement) that governs wages, hours, and work conditions of all employees in the bargaining unit. Article XIX of the Agreement provides that promotions shall be based on seniority. When a promotion opportunity arises, "present active employees with the longest actual service in the Job Classifications and Promotional Unit from which the promotion will be made shall receive first consideration," followed by employees in the same division. A 1980 Supplemental Agreement, fully incorporated into the Agreement, established a "Job Preference Program." The Job Preference

Program permits a bargaining unit employee interested in promotional opportunities and a career change to request a promotion outside of her or his traditional career promotion path. The Supplemental Agreement does not refer to Article XIX or in any way discuss how Job Preference Program promotions affect Article XIX requirements for promotion by seniority.[1]

In 1981 Tony Amey, an assembler, filed a request, through the Job Preference Program, for promotion to shipping clerk B. All previous shipping clerk positions had been filled by new hires. When a position became available, Hughes promoted Amey from assembler in the Hybrid Assembly Department to shipping clerk B in the Material Services Department. At the time of Amey's promotion fifty-nine Hybrid Assembly Department assemblers had greater seniority than he.

Local 1553 filed a grievance against Hughes, claiming that Amey's promotion violated Article XIX because other employees in his job classification had greater seniority. Pursuant to the Agreement, the parties submitted the dispute to arbitration in 1983.

In January 1984 the arbitrator sustained Local 1553's grievance. He rejected Hughes' argument that because the Supplemental Agreement does not refer to seniority or to Article XIX, Job Preference Program promotions are exempt from seniority constraints. He held that if the parties intended the Supplemental Agreement to modify Article XIX, they would have done so explicitly. Since they did not, the Supplemental Agreement did not obviate the contract requirement that seniority govern all promotions. Further, he held that the interpretation would not nullify the meaning and use of the Job Preference Program. Thus, he concluded that Hughes

violated the Agreement by promoting Amey when more senior employees were qualified and able to perform the job. He ordered Hughes to offer Amey's position to the assembler employee with the greatest seniority. He also retained jurisdiction for six months to resolve any disputes regarding the award.

In March 1984 Local 1553 requested a clarification of the arbitration award, arguing that Hughes had not complied with the decision. Although Hughes had promoted an employee to Amey's position, it refused to demote Amey. Indeed, subsequent to his shipping clerk B promotion, Hughes had promoted Amey twice more. Union grievances regarding these additional promotions were pending when the union requested the clarification. Despite the pending grievances, the arbitrator issued a Clarification of Decision ordering Hughes Aircraft to return Amey to a position equivalent to his original Assembler job. He concluded that since the initial promotion violated the contract, subsequent promotions based on that promotion were improper: To hold otherwise would permit Hughes to insulate an illegal promotion from challenge by immediately promoting the employee to a higher position.

Hughes filed in the district court a Petition to Vacate the arbitration award and the award clarification. After consideration of cross-motions for summary judgment, the district court granted summary judgment for Hughes, holding that the arbitration award was not a plausible interpretation of the Agreement and the Supplemental Agreement, and that the arbitrator exceeded his jurisdiction when he clarified the award. Local 1553 timely appealed the district court grant of summary judgment in favor of Hughes.

1. The promotion at issue here is not the first time Hughes and Local 1553 have disagreed about the relationship between the two provisions. At a previous arbitration Hughes argued that Article XIX applied only to promotions within a department. It claims Article XIX could not affect any Job Preference Program promotions because they were, by definition, promotions outside a department. The arbitrator rejected this argument and held that Article XIX applied to promotions within a department and promotions between departments if there was a historical pattern of promotions between the departments. The historical pattern made the interdepartmental promotions, in effect, intradepartmental. Here, the issue is whether Article XIX also applies to Job Preference Program interdepartmental promotions where there is no historical pattern of promotion.

## II.

We review a district court's grant of summary judgment de novo. *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1482 (9th Cir.1985). Because no genuine issue of material fact exists, we need only decide whether the district court correctly applied the law. *Martori Bros. Distributors v. James-Massengale,* 781 F.2d 1349, 1352 (9th Cir.1986).

Our review of arbitration awards is limited. "[I]f on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Gateway Structures, Inc. v. Carpenters 46, Northern California Counties Conference Board of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO,* 779 F.2d 485, 489 (9th Cir.1985) (quoting *George Day Construction Co. v. United Brotherhood of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984) (citations omitted)).

Hughes argues that the district court should be affirmed because the arbitration award was not a plausible interpretation of the Agreement. It claims that the only way to give full effect to Article XIX of the Agreement and the Supplemental Agreement is to hold that they apply to different types of promotions. It claims that the Agreement applies to promotions within a department or promotions within the same job classification *between* departments when there is a historically established promotional pattern. By contrast, the Supplemental Agreement applies to interdepartmental promotions *without* a history of promotions between departments. It claims that the arbitration award redefines and essentially nullifies the Job Preference Program purpose from providing opportunities for individual employees to seek promotion outside of their traditional department promotion pattern to a method of selecting job classifications from which promotions based on seniority may be made.

■ We determine that the arbitrator's decision is a plausible interpretation of the Agreement and the supplemental agreement. It is reasonable to conclude that the Job Preference Program provides an opportunity for promotion in addition to those contemplated by Article XIX, but that JPP promotions are still subject to the seniority limitations of that Article. The express language of Article XIX mandates that employees shall be promoted first from within the same department, and then from other departments within the same division. An arbitrator earlier found that Hughes need only make interdepartment offers of promotion between departments with a historically established promotional pattern. Hughes, therefore, may by historical hiring practices determine which departments create employee skills to allow cross-departmental promotions. The JPP allows Hughes to go beyond those historical practices in using the JPP, creating new promotional opportunities for specially skilled workers or simply creating new possibilities of promotion where past practice did not allow. It was plausible for the arbitrator to find that the ordinary rules of seniority require that Hughes offer the available promotion to the most senior qualified applicant in the department, even if he or she had not sought to use the JPP. Thus, if the JPP allows a promotional opportunity where one did not exist before, the more senior employees must be given an opportunity to take advantage of that new opportunity. If the JPP applicant has special skills that are required for a position, Hughes may, within the provisions of the Agreement, hire the less senior applicant so long as more senior applicants do not have those necessary skills. There is no allegation of special skills here. So long as the more senior employee possesses the "qualifications and ability to perform the duties of the requested job classification," he or she must be offered the job. The arbitrator's decision thus applies the JPP in a way that is inconsistent with the Agreement as interpreted in prior arbitrations, and which fulfills the intent of the seniority provisions of Article XIX and the new opportunities of the JPP.

## III.

■ While we uphold arbitration awards that are a plausible interpretation of the

collective bargaining agreement, we will not enforce awards exceeding the arbitrator's authority. *See Courier-Citizen Co. v. Boston Electrotypers Union No. 11, International Printing Union of North America,* 702 F.2d 273, 281 (1st Cir.1983). Arbitrators have broad powers to fashion appropriate remedies on submitted issues, *id.,* but they have no authority to decide issues not submitted by the parties, *Wren v. Sletten Construction Co.,* 654 F.2d 529, 533 (9th Cir.1981). The arbitrator properly retained jurisdiction to decide disputes arising in the administration of the award. *See Hanford Atomic Metal Trades Council, AFL–CIO v. General Electric Co.,* 353 F.2d 302, 307–08 (9th Cir.1966). However, that jurisdiction did not extend to deciding the merits of grievances not submitted to him.

■ The only issue submitted for arbitration by the parties was whether Amey's promotion from assembler to shipping clerk B violated the Agreement. Local 1553 requested a clarification when Hughes refused to demote Amey back to assembler. However, Hughes had promoted Amey twice since his promotion to shipping clerk B. These subsequent promotions are the subject of other independent pending grievances. As such, resolution of the subsequent promotions' merits was not before the arbitrator. *See Local Union No. 2–477, Oil Workers International Union v. Continental Oil Co.,* 524 F.2d 1048, 1050 (10th Cir.1975) (arbitrator exceeded authority by consolidating and deciding two grievances when only one submitted for arbitration), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976). The arbitrator's authority was limited to resolving the issue of Amey's initial promotion, and not to subsequent events. We therefore agree with the district court that the arbitrator exceeded his authority in the clarification award.

## IV.

We REVERSE the district court grant of summary judgment in favor of Hughes Aircraft Co. on the arbitration award claim. We AFFIRM the district court grant of summary judgment for Hughes Aircraft Co. on the award clarification claim.

Each party shall bear its own costs.

KENNEDY, Circuit Judge, dissenting:

With all due respect for my colleagues, I am constrained to dissent. All recognize that arbitrators have broad discretion to interpret collective bargaining agreements in light of their experience and insight into the inner workings of Industrial America. *See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *George Day Construction Co. v. United Brotherhood of Carpenters,* 722 F.2d 1471, 1477 (9th Cir.1984). It is not, however, within the arbitrator's discretion to resolve a perceived conflict between two contractual provisions by making one of them a nullity if both can be preserved by a perfectly plausible interpretation. *See Federated Employers of Nevada, Inc. v. Teamsters Local No. 631,* 600 F.2d 1263, 1265 (9th Cir.1979). This is especially so where the provision that is given no effect is a valid supplement to the earlier contract provision alleged to be conflicting.

The arbitrator's conclusion that any promotion through the Job Preference Program must be subject to the confines of the seniority system nullifies the program entirely. Under the arbitrator's interpretation, workers cannot pursue nontraditional promotional opportunities, which is the only conceivable purpose of the contract clause in question. The only substance that the arbitrator's decision ascribes to the Job Preference Program is to open new routes of promotion, but since these new routes are still subject to the seniority rules, that does not comport with the obvious purpose of the supplement. The majority's attempt to find more in the arbitrator's decision is unavailing. There is simply no escape from the fact that even this labored interpretation preserves the complete hegemony of the seniority system in the face of an agreement clearly intended to modify it. Every worker will have to wait for all the other workers with a longer tenure to be promoted before becoming

eligible for promotion. Thus, the arbitrator's decision negates any benefit to those very workers for whom the supplement was adopted. Unlike the majority, I am unable to conclude that this emasculation of the Job Preference Program is a permitted or plausible interpretation of the contract. In my view, the district court was correct on this principal issue, and I would affirm its judgment.